## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CITY OF TACOMA,<br>WASHINGTON, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. Action No. 04-1226 (RJL) |
| | ) | |
| NATIONAL MARINE FISHERIES | ) | |
| SERVICE, *et. al.*, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION
(August **10**, 2005) [#6]

The City of Tacoma ("the City") has brought this action against the National Marine Fisheries Service ("NMFS") seeking judicial review of a Biological Opinion ("BiOp") issued by the NMFS pursuant to the Endangered Species Act ("ESA"), 16 U.S.C. § 1531 (2005), and in relation to a licensing order granted by the Federal Energy Regulatory Commission ("FERC" or "the Commission") for continued operation of a federally regulated hydroelectric power generation facility. 16 U.S.C. §§ 791-828 (2005). The NMFS has moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), asserting that the Federal Power Act ("FPA") expressly deprives this Court of subject matter jurisdiction to hear plaintiff's claim. After due consideration of the parties' submissions, the relevant law, and the entire record herein, the Court GRANTS the defendant's motion.

## I. BACKGROUND FACTS

The Cushman Hydroelectric Project ("Cushman Project") is a 131-megawatt power generation facility located on the North Fork of Skokomish River on the Olympic Peninsula in Washington State, Compl. ¶ 2-6, owned and operated by the City of Tacoma, and licensed by FERC under provisions of the FPA.  16 U.S.C. § 797(e).  On July 30, 1998, FERC renewed the City of Tacoma's license to operate the Cushman Project subject to several new environmental conditions.[1]  Compl. ¶ 28.  The City of Tacoma objected to these conditions and, in accordance with the FPA, *see* 16 U.S.C. § 825l(a), sought a rehearing of FERC's licensing decision.  Compl. ¶ 29.

On March 24 and 25, 1999, while the rehearing request was pending, two species of fish indigenous to the Skokomish River were listed by the NMFS as "endangered" species.[2]  Compl. ¶ 30; *see generally* 16 U.S.C. § 1532 (ESA).  A week later, FERC denied the City's rehearing request and upheld the license in all material respects. Compl. ¶ 31.  However, because these fish were designated as endangered, FERC was required to submit to the NMFS for review a Biological Assessment of the environmental implications of renewing the Cushman Project license.  *See* 50 C.F.R. 402.12.  FERC did so on June 9, 2000, and concluded that if the operating conditions imposed in conjunction with its licensing order were retained, the Cushman Project would not jeopardize any protected species.  Compl. ¶ 34.  On August 9, 2000, however, the NMFS decided that a

---

[1]       Among the newly-imposed conditions, the City of Tacoma was instructed to build special passages, or channels, that permitted fish to bypass the hydroelectric dams and to increase the minimum flow releases into the river.  Compl. ¶ 28.  These new conditions conspired to add expense and to decrease the productive capacity of the Cushman Project for the City.  *Id.*

[2]       The newly listed species are the Puget Sound chinook salmon and the Hood Canal summer-run chum salmon; both species were listed as endangered.  Compl. ¶ 30.

"formal consultation" under section 7 of the ESA needed to be initiated to determine the threat, if any, that this project posed to these endangered species.[3]  Compl. ¶ 36; *see also* 50 C.F.R. 402.14(h).

While the NMFS was conducting the Cushman Project formal consultation, the City of Tacoma appealed FERC's licensing decision to the United States Court of Appeals for the District of Columbia Circuit.  Compl. ¶ 37.  Our Court of Appeals, however, declined to hear the City's appeal until the NMFS had concluded its formal consultation.  *Id.*  On March 4, 2004, the NMFS issued the final BiOp for the Cushman Project, concluding that although the licensing decision was not likely to jeopardize the continued existence of endangered salmon, the risk of an incidental taking of these protected species warranted certain environmental conditions FERC had imposed as part of its licensing approval.  Compl. ¶¶ 4, 42.  In response, the City renewed its appeal of the licensing decision to our Court of Appeals and *simultaneously* filed this suit challenging the NMFS Cushman Project final BiOp.

## II. ANALYSIS

Federal courts are courts of limited jurisdiction, possessing only those powers specifically granted to them by either the U.S. Constitution or Congress.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  If a court determines that it

---

[3]      The ESA sets forth two processes for reviewing federal actions that potentially jeopardize a threatened or endangered species: the "Biological Assessment", and the  "Biological Opinion."  A Biological Assessment is a relatively brief, threshold investigation, conducted by the agency whose decision is being questioned, to determine whether a protected species will actually be adversely affected by a federal action.  *See* 50 C.F.R. 402.12.  A Biological Opinion is the final product of the rigorous and lengthy "formal consultation" process, and is conducted exclusively by experts with either the NMFS or the Fish and Wildlife Service.  *See* 50 C.F.R. 402.14.  A BiOp represents an official culmination of a substantial scientific inquiry, and is therefore considered a final agency decision subject to review under the APA.  *See Bennett v. Spear*, 520 U.S. 154 (1997).

lacks subject matter jurisdiction to hear and decide a claim, the claim must be dismissed. FED. R. CIV. P. 12(b)(1). All matters are presumed to lie outside the limited jurisdiction of the federal courts until the plaintiff establishes that subject matter jurisdiction is proper. *Rasul v. Bush*, 215 F. Supp. 2d 55, 61 (D.D.C. 2002). Nevertheless, the complaint must be construed liberally and a plaintiff should receive the benefit of all favorable inferences that can be drawn from the alleged facts. *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

The NMFS contends that this Court lacks subject matter jurisdiction to hear plaintiff's claims. By way of background, section 4(e) of the FPA delegates to FERC the authority to issue licenses for the construction and operation of hydroelectric facilities. 16 U.S.C. § 797(e). FERC exercises this delegated authority as part of a complete and comprehensive plan for the development and utilization of electric power generated on any of the streams or bodies of water over which Congress has jurisdiction under its commerce powers. *Fed. Power Comm. v. Tuscarora Indian Nation*, 362 U.S. 99, 118 (1960). Although the FPA does not exempt FERC from compliance with the ESA or the Administrative Procedure Act, ("APA"), 5 U.S.C. §§ 701-706, it establishes *a separate and exclusive procedure* that governs review of its licensing decisions. 16 U.S.C. § 825l(b); *see also Skokomish Indian Tribe v. United States*, 332 F.3d 551, 558 (9th Cir. 2003). Thus, the narrow inquiry before this Court is whether plaintiff's claim, seeking review of the Cushman Project final BiOp, should be considered *separately* or as a part of the review of FERC's licensing decision by our Court of Appeals.

The City of Tacoma, not surprisingly, contends that the special-review provisions of the FPA are irrelevant because its suit was filed against the NMFS, not FERC, and arose under the ESA and APA. Compl. ¶ 1-6, 55-56. In effect, plaintiff argues that it is not challenging the ultimate licensing decision made by FERC, but it instead is seeking review only of the NMFS's failure to follow the procedural and substantive steps outlined in statutes beyond the scope of the FPA. *Id.* Consequently, the City claims an independent statutory basis for its claims and, thus, federal question jurisdiction pursuant to 28 U.S.C. § 1331. Compl. ¶ 7-8. For the following reasons, the Court disagrees.

The City of Tacoma argues that its claim does not challenge FERC's authority "to affirm, modify, or set aside" a license under the FPA, but rather merely seeks to enforce the NMFS's independent affirmative duties under the ESA and APA as if the two actions were not in the least interrelated. 16 U.S.C. § 825l(b); *see Southwest Ctr. for Biological Diversity v. F.E.R.C.*, 967 F. Supp. 1166, 1172 (D. Ariz. 1997) (noting similarities in cases brought under ESA citizen suit provision and FPA review process). Accordingly, it contends that this Court should have jurisdiction to hear its claims under 28 U.S.C. § 1331. Compl. ¶ 7; 28 U.S.C. § 1331 (2005). Although the City carefully crafts its complaint to avoid directly implicating the FPA, it is clear that the suit is a thinly veiled collateral attack on the FERC licensing process. Indeed, plaintiff's challenge to the Cushman Project final BiOp has no apparent significance whatever when separated from the FERC licensing order.

It is well-established that when two jurisdictional statutes provide different avenues for judicial review, courts apply the more specific legislation. *California Save*

*Our Streams, Inc.*, 887 F.2d at 911. This rule was adopted in this circuit when our Circuit Court held that "[i]f... a special statutory review procedure [exists], it is ordinarily supposed that Congress intended that procedure to be the exclusive means of obtaining judicial review in those cases to which it applies." *Media Access Project v. FCC*, 884 F.2d. 1063, 1067 (D.C. Cir. 1989). Here the specific provisions of the FPA that govern review of disputes concerning the licensing of hydroelectric facilities, like the Cushman Project, must preempt the general procedures for ESA and APA claims brought under general federal question jurisdiction. *See California Save Our Streams*, 887 F.2d at 911-12; *Bond*, 603 F.2d at 936 ("The policy behind having a special review procedure in the first place similarly disfavors bifurcating jurisdiction over various substantive grounds between the district court and court of appeals."); *cf. Media Access Project*, 884 F.2d. at 1067 (FCC enabling statute requires direct appellate review).[4]

By its express language, the FPA grants our Circuit Court *exclusive* authority to review and modify claims arising out of FERC licensing orders. *See California Save Our Streams, Inc.*, 887 F.2d at 910. Section 313(b) of the FPA states, in relevant part:

> Any party to a proceeding under this chapter aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order in the United States Court of Appeals... Upon the filing of such petition such court shall have jurisdiction, which upon the filing of the record with it shall be *exclusive*, to affirm, modify, or set aside such order in whole or in part.

16 U.S.C. § 825l(b) (emphasis added). Interpreting this provision, the Supreme Court has held that "simple words of plain meaning leave no room to doubt the congressional

---

[4]    *See also General Elec. Uranium Management Corp. v. Dept. of Energy*, 764 F.2d 896, 903 (D.C. Cir. 1985) (holding that "where it is unclear whether review jurisdiction is in the district court or the court of appeals, the ambiguity is resolved in favor of the latter") (quoting *Denberg v. United States R.R. Ret. Bd.*, 696 F.2d 1193, 1197 (7th Cir. 1983).

purpose and intent [to give the courts of appeals exclusive jurisdiction]." *City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320, 336 (1958); *see also City of Rochester v. Bond*, 603 F.2d 927, 935 (D.C. Cir. 1979).

Styling its complaint as an independent action against the NMFS does not enable the City of Tacoma to evade the clear jurisdictional provision of the FPA, *California Save Our Streams, Inc.*, 887 F.2d at 912, and Congress's clear intent in enacting the special FPA review process. As with many administrative review provisions, exclusive appellate review of FERC licensing orders was established to promote efficiency by eliminating redundancy and inconsistency at the district court level. *See Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 740 (1985). Adopting the City's approach to jurisdiction would, in effect, resurrect the very problems that Congress sought to eliminate by adopting the special review provision. *California Save Our Streams*, 887 F.2d at 912; *see also Skokomish Indian Tribe v. United States*, 332 F.3d at 558. Simply stated, there is no reason to believe that Congress inadvertently created the glaring loophole, which the City advocates, in contravention of the efficacy of the expedited process that it previously adopted. This result is implausible and, thus, unpersuasive.

Accordingly, plaintiff's claims must be reviewed under the FPA's more relevant, and stringent, jurisdictional standard, and the defendant's Motion to Dismiss is therefore GRANTED.

## III. CONCLUSION

For the above-stated reasons, defendant's Motion to Dismiss is GRANTED.  An appropriate order will be issued simultaneously herewith.


RICHARD J. LEON
United States District Judge